IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| DARRYL KEITH BROWN | § | |
| v. | § | CIVIL ACTION NO. 6:09cv156 |
| SHERIFF PAT BURNETT, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Darryl Brown, an inmate of the Van Zandt County Jail proceeding *pro se*, filed this civil action complaining of alleged violations of his constitutional rights during his confinement in the jail. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in the proceeding pursuant to 28 U.S.C. §636(c). The named Defendants are Sheriff Pat Burnett and jail administrator George Flowers.

At an evidentiary hearing and in his complaint, Brown said that he was arrested on July 27, 2008. After he was booked into the jail, he said, Sheriff Burnett came to his cell and told him that if he did not want to confess, Burnett would make sure that he got "life and a day." At a later time, he says, Burnett told him that if he did not cooperate, he would "die in prison."

After he saw the judge, Brown said, he was placed in solitary confinement. When he wrote to Flowers to ask why, a sign was put up saying not to open Brown's door. In addition, he says, a rule was made that if there were visitors, Brown would go last. He says that he was not allowed access to religious programs or recreation and that he had no access to the phone. He spent 45 days in solitary confinement.

Brown said that he knew Burnett because Burnett had arrested him "many times," He said that he thought that Burnett was retaliating against him because he considered Brown to be a "career criminal." In the solitary cell, Brown said that he had no religious items, no telephone, and low lights; he stated that this was very different from the treatment given to other inmates. Brown

1

added that he had been placed int his confinement without a hearing and that he was not allowed to attend church services or recreation.

On cross-examination, Brown said that the sign over his door said not to open it unless two officers were present. He said that he was allowed to use the phone when he was arrested, but not thereafter. Although a call had been placed from the jail to Brown's sister, Brown suggested that other inmates had done so, again saying that he had no access to the phones.

Brown stated that some employees of the sheriff's department had told his sister that if the family visited, Brown would go last, and he could not visit at the same time as other inmates. He said that he had "heard rumors" about guards throwing away inmate grievances, and said that he did not get a mattress while in solitary confinement.

When asked by the Court why he had sued Sheriff Burnett, Brown said that he was seeking damages because of his cell placement. He said that he should have had the same privileges as other inmates when he had done nothing wrong. He said that he addressed grievances to Flowers but never received a response.

Chief Jailer George Flowers testified that Brown had been single-celled, and that inmates were single-celled for various reasons, including violence or escape risk. In Brown's case, he said, a single cell was assigned because Brown had an escape history.

On cross-examination, Flowers said that all cells had phones. He denied knowing that Brown's did not, and said that Brown was moved out of the single cell after he got reclassified. Flowers also stated that he was unaware that Brown was not going to religious services or to recreation.

In rebuttal, Brown said that if he had been single-celled because he posed a threat or was an escape risk, he would not have been moved, because nothing would have changed. He said that he wrote Flowers letters and that Burnett and Flowers knew of the situation but are "trying to cover it up." In fact, Brown says, he was moved out of the cell because he filed suit, not because he had been reclassified.

The Van Zandt County Jail Records

The jail records from the Van Zandt County Jail show that Brown was arrested on July 27, 2008, on charges of evading arrest, theft, and criminal mischief. The classification sheet shows that he attained a score of 19, resulting in a recommendation that he be assigned to maximum custody and housed in a detox cell. On September 25, Brown was reassessed and given a score of 9, resulting in a recommendation that he be housed in maximum custody and assigned to cell 7. On November 26, 2008, he was again reassessed and given a score of 7; he was still housed in cell 7 but assigned to medium custody. The classification records show that he was placed in the detox cell on July 26, and moved to cell 1 on July 28. On July 31, he was moved to cell 16, and on September 18, he was moved to cell 25. The next day, he was moved to cell 7, where he remained.

The jail records show that On July 30, 2008, Brown asked to use the law library, explaining that "my civil rights is being violated by the Van Zandt County Sheriff."

On November 24, 2008, Brown filed a grievance complaining that his cell phones are not with his property, because he had two phones and they are both missing. The response was that the phones were taken as evidence by an investigator named Reedy. Around that same date, Brown filed a request asking to go to the law library. The response was "11-27-08."

On January 30, 2009, Brown again asked to visit the law library, saying that he wanted to work on his case and get some addresses. The response was that the request was granted and that he would go on February 2 and 9:45 a.m. Brown then asked again, in a separate request, to go to the law library, and the response again was that he would go on February 2.

In March of 2009, Brown requested a legal visit with an inmate named Logan, but that this request was denied on March 2, 2009, for the reason that "cannot put you in with other inmates." On April 15, 2009, Brown said that he wanted inmate Logan to help him with his legal work. The response was that at 8:30 a.m., Brown refused to go to the law library, On April 15, Brown filed a grievance complaining about the requests to go to the law library and the grievances which he had filed, and the response was that Brown was scheduled for the law library on April 16

3

and April 17. The response also lists the dates of April 20 and April 21, but it is not clear if Brown was scheduled to go on those dates. There are no other grievances or request forms in the jail records.

## Legal Standards and Analysis

In their answer, the Defendants raise the affirmative defense of failure to exhaust administrative remedies. Prior to the passage of the Prison Litigation Reform Act, Public Law 104-134 (April 26, 1996), lawsuits brought by inmates who had not exhausted their administrative remedies would be stayed for a period of up to 180 days in order to permit exhaustion. 42 U.S.C. §1997e(a)(1). This provision has now been deleted from the law. As amended, 42 U.S.C. §1997e(a) reads as follows:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Title 42 U.S.C., Section 1997e(a), as amended by Public Law 104-134, Title I, sec. 101, April 26, 1996, *renumbered as* Title I, Public Law 104-140, sec. 1 (May 2, 1996, 110 Stat. 1327). No statutory basis now exists for placing a stay on the action; instead, completion of the exhaustion process is a mandatory prerequisite for filing the lawsuit.

In other words, the exhaustion process must be completed before the federal lawsuit is filed; even complete exhaustion following the filing of the lawsuit is not sufficient. Underwood v. Wilson, 151 F.3d 292, 296 (5th Cir. 1998). In that case, the Fifth Circuit stated as follows:

> By choosing to file and pursue his suit prior to exhausting administrative remedies as required, Underwood sought relief to which he was not entitled--that is, federal court intervention in prison affairs prior to the prison having had the opportunity to address the complaint within its grievance procedures. We therefore affirm the district court's order dismissing Underwood's action with prejudice for purposes of proceeding IFP.

Underwood, 151 F.3d at 296.

The Supreme Court has stated that the purpose of the exhaustion requirement is to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. Woodford v. Ngo, 126 S.Ct. 2378, 2387 (2006). In order to achieve this

goal, the Court said, "proper" exhaustion would be required; in other words, the prison officials must be given a fair opportunity to consider the grievance, and this will not happen unless the grievant complies with the system's procedural rules.

In this case, Brown complains that he was placed in solitary confinement without a hearing, he was not allowed to attend religious services, and he was denied access to telephones and recreation. None of these complaints appear in any of the requests or grievances in the jail records. As a result, the jail administrators were not give a fair opportunity to consider the complaints, and so Brown has failed to exhaust his administrative remedies.

Brown appears to argue that he was thwarted in his attempts to exhaust administrative remedies by complaining that he filed grievances which were not answered. However, his allegations are wholly conclusory and thus insufficient to evade the exhaustion requirement. *See* Willich v. Brownlow, civil action no. 6:08cv244, 2010 WL 297844 (E.D.Tex., January 19, 2010, no appeal taken) (rejecting conclusory allegation of inability to exhaust); Mentecki v. Corrections Corp. of America, 234 F.3d 1269 (6th Cir., October 27, 2000) (not selected for publication in the Federal Reporter) (available on WESTLAW at 2000 WL 1648127) (inmate who "merely makes a speculative and conclusory assertion that filing a grievance would be futile has not satisfied the exhaustion requirement of Section 1997e(a)"); *accord*, Penn v. Kastner, civil action no. 5:05cv202 (E.D.Tex., April 4, 2007) (unpublished) (available on WESTLAW at 2007 WL 1051773) (inmate's conclusory assertion that "the grievance process is futile" does not set forth a valid basis upon which to excuse the exhaustion requirement); Veloz v. New York, 339 F.Supp.2d 505, 516 (S.D.N.Y. 2004) (unsupported allegations that grievances "must have been lost or misplaced" does not relieve inmate of the obligation to appeal claims to the next level once it becomes clear that a response to the initial filing was not forthcoming).

The Veloz court observed that the plaintiff there was "most assuredly keenly aware of the grievance process." That fact exists here, as is shown by the grievances and jail request forms which Brown filed, including one request form only two days after he arrived in the jail. *See also*

Wiley v. Civigenics, civil action no. 5:07cv60, 2009 WL 260948 (E.D.Tex., February 3, 2009) (no appeal taken) (conclusory claim of inability to exhaust not sufficient to meet exhaustion requirement); Nunez v. Goord, 172 F.Supp.2d 417, 428-29 (S.D.N.Y. 2001) (inmate's unsupported claims that his grievances were lost at the grievance office or destroyed by officers failed to excuse inmate from exhaustion requirement).[1] Brown has offered only bald and conclusory allegations in support of his claim that he was unable to exhaust administrative remedies, and so his lawsuit may be dismissed on this basis.

As noted above, the Fifth Circuit has held that where an inmate chooses to file and pursue his lawsuit prior to exhausting administrative remedies, he is seeking relief to which he was not entitled--that is, federal court intervention in jail affairs prior to the jail having had the opportunity to address the complaint within its grievance procedures. Where this is done, the Fifth Circuit said, the district court is entitled to dismiss the lawsuit with prejudice. Underwood, 151 F.3d at 296. That very situation exists here. At the time that Brown filed his lawsuit, he had submitted a number of inmate request forms and grievances, but made no mention of any of the allegations raised in his lawsuit in any of these. Brown filed and pursued his lawsuit prior to exhausting administrative remedies in a proper procedural manner, and so his lawsuit may be dismissed on this basis. It is accordingly

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice for failure to exhaust administrative remedies. 42 U.S.C. §1997e. It is further

---

[1] This rule exists outside of the correctional context as well. In Parham v. Carrier Corp., 9 F.3d 383, 391 (5th Cir. 1993), the Fifth Circuit held in a wrongful discharge lawsuit that to avoid the exhaustion requirement under a collective bargaining agreement, a former employee has the burden of producing some evidence that resort to available grievance procedures would in fact be futile. The Fifth Circuit expressly said that conclusory assertions or mere subjective belief, even if in good faith, would not suffice.

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.

**So ORDERED and SIGNED this 17th day of May, 2010.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE